IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JULIA M. STONE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 06-40-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

David B. Lowry
Attorney at Law
9900 S.W. Greenburg Road, Suite 235
Portland, OR  97223

  Attorney for Plaintiff

David R. Johnson
Michael McGaughran
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA  98104

    Neil J. Evans
    UNITED STATES ATTORNEY'S OFFICE
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

      Attorneys for Defendant

JONES, Judge:

Claimant Julia Stone seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Following a careful review of the record, the court concludes that this action must be remanded to the Commissioner for further proceedings.

## ADMINISTRATIVE HISTORY

Claimant filed applications for DIB and SSI on January 2, 2002, with a protective filing date of November 7, 2001, alleging an inability to work since August 6, 2000, due to status-post carpal tunnel release surgery, fibromyalgia, hypertension, temporomandibular joint disease ("TMJ"), plantar fasciitis, obesity, depression and anxiety. The applications were denied initially and on reconsideration.

Claimant requested a hearing. Hearings were convened before an Administrative Law Judge ("ALJ") on February 4, 2004, April 5, 2004, and finally on June 14, 2004. The continuances evidently resulted from claimant's submission of new exhibits at the first two hearings. At the hearing on June 14, 2004, claimant, represented by counsel, appeared and testified, as did plaintiff's friends, Gary McGuffin and Troy Albin, a vocational expert ("VE"), and Dr. Prasanna Pati, an impartial medical expert. On August 23, 2004, the ALJ issued a

decision denying claimant's applications. The ALJ's decision became the final decision of the Commissioner on November 22, 2005, when the Appeals Council declined review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. §§ 404.1520, 416.920. The ALJ first found that claimant has not been engaged in substantial gainful activity since her alleged onset date. The ALJ then determined that claimant met the nondisability requirements for a period of disability and DIB through the date of his decision.

Second, the ALJ found that claimant has severe impairments in the form of "Disorders of the Muscle, ligaments, fascia-inclusive of Fibromyalgia; status-post Fracture of a lower limb; Pain Disorders; Somatoform Disorders and Adjustment Disorder with Depressed Mood," and non-severe impairments in the form of hypertension, TMJ, and plantar fasciitis. The ALJ further found that claimant's severe and non-severe impairments, either singly or in combination, do not

meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation

No. 4. Tr. 30, 40-41.

In the next step of the evaluation, the ALJ determined that claimant retains the following residual functional capacity:

> [t]he "wide range" of Light exertion, with "moderate" Postural, Environmental and Vocational non-exertional limitations. Exertionally, the claimant is capable of being able to "lift and carry" up to 20 pounds occasionally and up to 10 pounds frequently; she can "stand and walk" up to 2 hours (cumulatively, not continuously), in an 8 hour workday with normal breaks; plus "sit" about 6 hours (cumulatively, not continuously) in an 8 hour workday with normal breaks; her "push/pull" capacity is limited to the weight she can "lift-and-carry," for both her upper and lower extremities, as set forth above, both "occasionally" and "frequently."
>
> The claimant's Postural non-exertional limitations are that she can "occasionally" climb "stairs and equivalent ramps." She is precluded however from climbing "ropes, ladders or scaffolds." Because of her chronic narcotic medications usage, the claimant's Environmental non-exertional limitations are that she must avoid all hazards, such as "working at unprotected heights or around machinery with exposed moving parts." Based on the Mental Residual Functional Capacity Form, * * * I find the claimant has Vocational non-exertional limitations of having "Moderate" concentration difficulties, and also she is limited to no more than "occasional" interaction with the general public.

Tr. 39. In making that determination, the ALJ found that claimant's reported allegations regarding her limitations were not entirely credible. Tr. 41.

The ALJ noted that at the time of her alleged onset date, claimant was a "younger individual age 44 to 49," and had more than a high school education. Tr. 41 (citations omitted). The ALJ then determined that neither claimant's medically determined impairments nor her residual functional capacity precludes her from returning to her past relevant work as a "Corrections Technician; Office Assistant and Alcohol-Drug Evaluator," and consequently found

claimant not to be disabled at any time through the date of his decision within the meaning of the Social Security Act and denied her applications for benefits. Id.

## STATEMENT OF FACTS

The parties are familiar with the medical and other evidence of record. I will not, therefore, repeat the evidence except as necessary to explain my decision.

## DISCUSSION

Claimant makes a variety of allegations of error in the Commissioner's decision: She contends that the ALJ erred (1) in not permitting her friend Gary McGuffin, Ph.D., to testify about claimant's impairments as they relate to the listing of impairments; (2) in rejecting Dr. Reay's opinions; (3) in determining claimant's residual functional capacity; (4) in rejecting claimant's lay witnesses' testimony and her own testimony; and (5) in determining that claimant can return to her past relevant work.

The ALJ's decision in this case is thorough and well-reasoned, and is largely free of error. Unfortunately, however, the ALJ's articulated assessment of claimant's residual functional capacity contains errors that although perhaps insignificant in the final outcome, require remand under Ninth Circuit precedent. Specifically, the ALJ failed to discuss claimant's obesity as "severe" or "non-severe" at Step 2 of the sequential evaluation and failed to articulate any consideration of obesity as it affects or does not affect her residual functional capacity. See generally SSR 02-01p (2002) and the discussion in Burch v. Barnhart, 400 F.3d 676, 682-84 (9th Cir. 2005). Additionally, the ALJ failed to articulate reasons for rejecting the statements of three of claimant's friends, Charles Wall, Cathy Pritchard, and Jane Nishizaski. See generally Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2005).

5 - OPINION AND ORDER

With respect to claimant's obesity, the Commissioner may be correct that the ALJ "took into account all work related limitations, whether caused by obesity or another impairment." Defendant's Brief, p. 16. The problem is, however, that the ALJ did not say so; instead, the ALJ stated that claimant is obese without making any further findings concerning obesity. This court is not authorized to make independent findings; that job is reserved to the Commissioner in the first instance. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

Similarly, with respect to the lay witness statements, the Commissioner may be correct that the ALJ could reject the statements because they "did not competently address how [claimant's] impairments affected her ability to work." Defendant's Brief, p. 16. The problem, again, is that the ALJ did not say why he rejected the witnesses' statements; rather, the decision is silent on this point. Although my review of the statements at issue tends to confirm the Commissioner's characterization of their quality, the Ninth Circuit recently confirmed that the ALJ, not this court, "is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054. Moreover, because I cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the error cannot be considered harmless. Stout, 454 F.3d at 1056.

To guide the Commissioner on remand, I briefly address claimant's remaining arguments.

1.   Witness McGuffin

Claimant argues that the ALJ violated his duty to develop the record as well as claimant's due process rights by prohibiting her friend, Gary McGuffin, from testifying to his opinions as to the severity of claimant's alleged mental impairments with respect to the "B" and "C" criteria for certain listed impairments. See Plaintiff's Opening Brief, p. 13; Tr. 834-36. According to

claimant, lay witness testimony is sufficient to prove that a claimant equals a listing, citing Schneider v. Commissioner, 223 F.3d 968 (9th Cir. 2000).  Plaintiff's Opening Brief, p. 14.  As a general proposition, claimant is correct.   In this case, however, the ALJ did not err in rejecting McGuffins' proffered testimony concerning the listing criteria because, as is abundantly clear in both the record and in the ALJ's decision, McGuffin worked with claimant from 1991 through 1997, a time period well outside the period under review, and during the relevant time period saw claimant about once a month, at a Starbucks.  Tr. 826.  The transcript reveals that much of McGuffin's proposed testimony was not based on personal observation, was replete with speculation, and was inconsistent with the medical evidence of record.  And although claimant now protests that she did not proffer McGuffin as an "expert," counsel's post-hearing letter to the ALJ, at Tr. 367, characterizes McGuffin as "not exactly a 'lay' witness."

     To the extent Schneider guides my decision in this case, it clarifies that an ALJ cannot ignore, without explanation, lay witness testimony that is based on personal knowledge and observation when assessing the "B" and "C" criteria.  The ALJ in this case did not ignore McGuffin; instead, the ALJ considered McGuffin's testimony to the extent that he personally observed claimant "'at Starbucks,' for an hour, perhaps less, 'about once a month.'"  Tr. 38.  The ALJ appropriately did not allow McGuffin to testify as an expert, as the witness admitted that he never had been a treating, evaluating, or treatment prescribing source for claimant (Tr. 38); moreover, McGuffin admitted that he had reviewed only one report of the multiple reports of record.  The ALJ did not err in rejecting McGuffin as a medical expert.

    2.    <u>Dr. Reay</u>

Claimant contends that the ALJ erred in rejecting all of Dr. Reay's opinions. As claimant acknowledges, an ALJ must review medical source opinions and "explain why the opinion was not adopted." Plaintiff's Opening Brief, p. 14. Claimant further acknowledges that it is left to the ALJ to assess the weight to be afforded each opinion. <u>Id.</u>

Certain factors circumscribe the ALJ's assessment. <u>See</u> 20 C.F.R. §§ 404.1527(d)(3) and (4), 416.927(d)(3) and (4). The factors include the nature, length and extent of the treatment relationship, the supportability and consistency of the opinions, the physician's specialization and any other relevant factors that tend to support or contradict the opinion. <u>Id.</u> An ALJ must give "clear and convincing" reasons for rejecting *the uncontroverted opinions* of a treating or examining physician; if the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" to reject the opinion. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). In either case, "[t]he ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir.1989) (internal quotation marks omitted).

By the time of the hearing, Dr. Reay had treated claimant for only four months. The ALJ noted the brevity of this relationship, Dr. Reay's willingness to make diagnoses based on minimal medical signs and no findings, and thoroughly and in great detail explored Dr. Reay's opinions and the conflicting medical evidence, which was abundant. <u>See</u> Tr. 32-34. The ALJ concluded, appropriately, that Dr. Reay's opinions were entitled to no weight because

8 - OPINION AND ORDER

>
> the evidence of record does not fully support the nature and severity of claimant's impairment, specifically in terms of both "degree" and "duration," that Dr. Reay reports in her letter and answers in the Fibromyalgia Questionnaire * * *.
>
> Further, I find Dr. Reay's opinions are not supported by any medical signs or findings, including detailed consideration of her own records. She generically list[s], one time, that the claimant is positive for *tenderness*, in multiple trigger points area, however, she does not detail how many, out of the 18 possible areas; she diagnos[es] osteoarthritis, when all signs and findings show no etiology for any arthritic condition; and she does not test any of the control points, at any time, since January 14, 2003, through the date of this decision. * * *
>
> I also give *no weight* to Dr. Reay's opinion, as reflected in the fill-in the blanks Fibromyalgia Questionnaire, because much of the annotations are clearly erroneous * * *; her treatment relationship was still in a very early stage (i.e., four months), and her assessment of the nature, severity, frequency and functional limitations, allegedly resulting from her pain, are wholly unsupported by the substantial and medical evidence of record * * *, [and] the opinion * * * is brief and consists of conclusions with little or no clinical findings to support the conclusion * * *.

Tr. 34-35.

I conclude that the ALJ properly considered Dr. Reay's medical records and opinions, and gave appropriate reasons, supported by substantial evidence in the record, for giving Dr. Reay's opinions, such as they were, no weight. I thus find no error in the ALJ's assessment of Dr. Reay's opinions.

3.    <u>Claimant's Credibility</u>

Because this case must be remanded for consideration of claimant's obesity as it affects her residual functional capacity and for consideration of lay witness statements, I do not reach the ALJ's determination of claimant's credibility. Instead, the ALJ should reconsider claimant's credibility in light of the evidence that has yet to be discussed.

CONCLUSION

For the reasons stated, this case is REMANDED to the Commissioner pursuant to sentence 4 of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 3rd day of January, 2007.

        /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge